IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HOLLY A. MILLER,                )
                                )
        Plaintiff,               )
                                )
    v.                          )        Civil Action No. 09-0263
                                )
WESTINGHOUSE ELECTRIC CO.,       )
                                )
        Defendant.              )

MEMORANDUM

Gary L. Lancaster
Chief Judge.                                        June 21, 2010

This is an action in employment discrimination. Plaintiff, Holly A. Miller, alleges that defendant, Westinghouse Electric Co.[1] ("Westinghouse") discriminated against her because of her gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.[2]

Before the court is Westinghouse's motion for summary judgment [Doc. No. 29]. For purposes of the pending motion only, Westinghouse does not dispute that Miller is able to establish a prima facie case of gender discrimination, but contends that because Miller has not come forth with sufficient evidence to prove

---

[1]

Defendant's proper corporate name is Westinghouse Electric Company LLC.

[2]

Miller has abandoned her wage discrimination claim under the Equal Pay Act [Doc. No. 35, at p. 1 ("Plaintiff also made a claim for sex discrimination in the wages paid to her, but will not proceed on that claim at trial, and does not oppose dismissal of that claim.")]. Therefore, we will dismiss that claim with prejudice.

that Westinghouse's legitimate, non-discriminatory reason for terminating her employment was a pretext for gender discrimination, summary judgment should be granted in its favor. In response, Miller argues she has established material factual disputes sufficient to preclude summary judgment. Because we find that no material fact is in dispute, Westinghouse is entitled to judgment as a matter of law.

I. RELEVANT FACTUAL BACKGROUND

All material facts discussed herein are undisputed unless otherwise indicated. Other facts may be discussed throughout this memorandum in context.

Westinghouse contends that it terminated Miller because: (1) she had inappropriate contact with a subordinate employee; and (2) she violated Westinghouse procedures with respect to processing materials. The facts and circumstances surrounding these events are discussed below.

A. Inappropriate Contact - The Brenda Bell Incidents

On August 29, 2005, Westinghouse hired Miller as a supervisor of its specialty metals plant in Blairsville, Pennsylvania. Among others, Miller supervised Brenda Bell, a fuel finisher at the plant.

On multiple occasions in late 2006 and early 2007,

2

Miller placed overtime passes into Bell's pockets, at least once in the back pocket of her pants and once in the front pocket of her hooded sweatshirt. Bell testified that in hindsight, Miller's actions made her feel like she had been sexually harassed, and that she did not think anyone should be touching her and putting things in her pockets.

Although Miller does not dispute placing overtime passes in Bell's pockets, she contends that her conduct was not inappropriate because there were no words exchanged and absolutely no physical contact between she and Bell during these incidents. Also, Bell made no objections or complaints directly to Miller regarding the incidents.

Bell, however, did complain to her union representative about the incidents. The union did not inform Westinghouse of the incidents until several months after the first incident had occurred.

Upon learning of the incidents, Westinghouse conducted an investigation during the course of which Miller: (1) never denied she placed overtime passes in Bell's pockets on multiple occasions; (2) offered to apologize to Bell for making her feel uncomfortable; (3) asked Westinghouse's human resources manager, Lori Nguyen, "How much trouble am I in?"; and (4) acknowledged to Nguyen that her conduct toward Bell was inappropriate.

As a result of the investigation, on October 25, 2007,

Westinghouse suspended Miller for ten days and issued a mandatory referral to its Employee Assistance Program for inappropriate behavior in the workplace.

B.  <u>The Hold Tag Incident</u>

Approximately one month after Miller's suspension for the Bell incidents, Miller instructed another subordinate employee, Brad Huston, to process material that was subject to a "hold tag" at the Blairsville plant. A hold tag is a three by five-inch red card that is placed on material for the purpose of stopping the production or processing of material.

At all relevant times, Miller knew that continuing the production or processing of material subject to a hold tag was a violation of Westinghouse's policies. Nevertheless, on November 19, 2007, Miller instructed Huston to process material that was subject to a hold tag.

According to Miller, she instructed Huston to process the hold tag material because of an instruction she received from George Huss, the acting manager of the fuel product line's completion area who was filling in as shift supervisor at the Blairsville plant that day. Huss had filled out a "release report," which is a report that provides production information such as "release numbers" and "release status." The release report contained a notation that a particular "lot" of material was to be

processed. A "lot" of material is a bundle of approximately six hundred tubes that is to be processed as a group. The actual "lot" in this case, however, was subject to a hold tag that indicated it should not be processed.

On the day in question, Huss gave his release report to the second shift supervisor, Kevin Penn, who in turn gave the report to Miller at the beginning of her shift. Miller assumed that Huss knew about the hold tag on the lot of material. She did not ask Huss or anyone else whether Huss knew about the hold tag. Huss testified he did not know about it. Miller admits that her instruction to Huston to process the material subject to a hold tag violated Westinghouse's policies and procedures.

On January 7, 2008, Westinghouse terminated Miller for violating the Blairsville plant's rules of conduct, gross insubordination, and contradicting Westinghouse's code of business ethics. On February 5, 2009, Miller filed the instant lawsuit against Westinghouse.

II. STANDARD OF REVIEW

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.

5

P. 56(c)(2).

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, *i.e.*, the material facts, however, will preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. Id. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 248-49.

The United States Supreme Court has "emphasized, [w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (internal quotations omitted) (quoting Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

Although inferences must be drawn in favor of the

nonmoving party, "an inference based upon speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990). Similarly, the non-moving party cannot rely on unsupported assertions, speculation, or conclusory allegations to avoid a motion for summary judgment. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Celotex v. Catrett, 477 U.S. 317, 324 (1986)).

In summary, the inquiry on a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute, or whether the evidence is so one-sided that the movant must prevail as a matter of law.

It is on this standard that the court has reviewed Westinghouse's motion for summary judgment. For the reasons that follow, the court will grant the motion.

III. DISCUSSION

Miller alleges that Westinghouse fired her on the basis of her gender. Westinghouse argues that it is entitled to summary judgment on this claim because Miller cannot prove that Westinghouse's reason for its decision, Miller's violation of Westinghouse's hold tag procedure and her inappropriate contact with a subordinate employee, was pretextual under McDonnell Douglas

7

Corp. v. Green, 411 U.S. 792, 802 (1973).

Under McDonnell Douglas, once Miller has met her burden of proving a prima facie case, which is conceded for purposes of the pending motion, Westinghouse must articulate a legitimate nondiscriminatory reason for terminating Miller. Id. Miller then has the opportunity to prove, by a preponderance of the evidence, that Westinghouse's reason is merely pretextual and that the true reason for the action was discrimination. Id. at 804.

A. Westinghouse Has Proferred Legitimate, Non-Discriminatory Reasons for Terminating Miller

Based on the evidence of record, we find that Westinghouse has articulated legitimate, non-discriminatory reasons for Miller's termination. Westinghouse fired Miller due to her violation of its procedures regarding processing materials subject to hold tags and her inappropriate contact with Bell. As such, in order to withstand summary judgment, Miller must demonstrate that these proffered reasons for her termination were a pretext for gender discrimination. Id. at 804-05.

B. Pretext

To establish pretext, Miller must point to specific evidence sufficient to permit a fact finder either: (1) to disbelieve Westinghouse's articulated, legitimate reason for terminating her; or (2) to believe that gender discrimination "was

8

more likely than not a motivating or determinative cause of [Westinghouse's] action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994); see also Salley v. Circuit City Stores, Inc., 160 F.3d 977, 981 (3d Cir. 1998) (citation omitted).

Here, there is no dispute that Miller committed the errors and infractions of which she is accused, and no reasonable juror could find to the contrary based on the record. Miller admits she violated Westinghouse's procedures when she instructed Huston to process material subject to a hold tag. With respect to the Bell incidents, Miller admits she placed overtime passes in Bell's pockets on multiple occasions. She admits she offered to apologize to Bell for making her feel uncomfortable. Miller also admits asking Nguyen how much trouble she was in for the Bell incidents and admits she acknowledged to Nguyen that her conduct was inappropriate.

Despite her admissions, Miller attempts to establish pretext and avoid summary judgment by arguing that: (1) Westinghouse has a long history of discrimination; (2) Bell is lying about feeling sexually harassed; (3) the hold tag incident and the Bell incidents did not justify her termination; and (4) males were not given the same or similar discipline for similar conduct. We will address each of these arguments separately below. None satisfy Miller's burden to establish pretext.

1. <u>History of Discrimination</u>

As to the first issue, Miller argues that Westinghouse must have discriminated against her because Westinghouse "has a long history of race, age, and sex discrimination" and "historically ... segregated its jobs into male and female jobs" [Doc. No. 35, at pp. 1-2].

Such generalized accusations regarding Westinghouse's past conduct are wholly unrelated to its treatment of Miller and insufficient to avoid summary judgment. Miller cannot survive summary judgment by "[m]erely reciting that discrimination was the reason for the decision." <u>Billet v. Cigna Corp.</u>, 940 F.2d 812, 816 (3d Cir. 1991). She must identify some evidence to support a jury determination of pretext, which she has not. Miller even admits that she has not pointed to any competent record evidence to suggest that her termination had anything to do with gender [Doc. No. 37, at p. 3, ¶ 35]. Her reliance on Westinghouse's alleged past discrimination against other employees in no way suggests that Westinghouse was motivated by discriminatory animus in terminating her, and no reasonable jury could find to the contrary based on the record.

2. <u>Bell's Credibility</u>

Despite Miller's admission that she placed overtime passes in Bell's pockets on multiple occasions, she contends that Bell is lying about feeling sexually harassed and gave Miller

permission to take such actions.

Miller's accusations regarding Bell's credibility do not create a genuine issue of material fact. The victim's reaction to the harassment is not dispositive under these facts. Even if Miller took such actions with Bell's permission, Westinghouse investigated and concluded that the incident was inappropriate workplace conduct by a supervisor. In such an instance, "[t]he Court may not second-guess the wisdom of the employer's decision, but may only consider whether that decision was motivated by discrimination." Schwoebel v. Catholic Diocese of Pittsburgh, No. 06-0533, 2007 WL 4302097, at *4 (W.D. Pa. Dec. 6, 2007); see also Keller v. Orix Credit Alliance, 130 F.3d 1101, 1109 (3d Cir. 1997) ("The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination].") (quotations and citation omitted).

Miller has failed to come forward with any evidence of discriminatory animus on Westinghouse's behalf. Accordingly, we reject Miller's argument that Bell's credibility creates a genuine issue of material fact.

### 3. Seriousness of the Hold Tag and Bell Incidents

Miller's third argument, that the hold tag and Bell incidents did not justify her termination, is immaterial. An employee can discredit an employer's articulated reason for an

employment decision by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a reasonable fact finder could rationally find them 'unworthy of credence.'" Simpson v. Kay Jewelers, 142 F.3d 639, 644 (3d Cir. 1998). However, an employee cannot simply show that the employer's decision was wrong, mistaken, or harsh because the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Fuentes, 32 F.3d at 765.

Here, Miller argues that it was harsh and wrong to fire her for violating the hold tag policy and for the Bell incidents. With respect to the hold tag incident, there is no dispute regarding Miller's instruction to Huston. Contrary to Miller's position, the reason for the placement of the hold tag on the material, whether for safety or cosmetic reasons, is irrelevant. Miller argues, however, that she was a good supervisor and a good employee, so should not have been terminated for her instruction to Huston to process the hold tag material on November 19, 2007.

Likewise, with respect to the Bell incidents, there is no material dispute as to the fact that Miller placed overtime passes in Bell's pockets on multiple occasions. Nevertheless, Miller contends her conduct toward Bell did not constitute sexual harassment under Westinghouse's sexual harassment policy because:

12

(1) submission to the conduct was not a condition of Bell's employment; (2) the conduct was not used by Miller as a basis for employment decisions; and (3) according to Miller, her conduct did not interfere with Bell's job performance. Miller also argues that termination was inappropriate because there was no physical contact when she placed the passes in Bell's pockets, and Miller said nothing inappropriate to Bell during the incidents. For these reasons, Miller contends she should not have been terminated, and Westinghouse's discipline of her for the Bell incidents was due to her gender and not for any legitimate reason.

We find that Miller has failed to establish discriminatory animus. Whether we, or Miller, agree or disagree with Westinghouse's application of its sexual harassment policy in this instance is of no moment. Miller's assertion that Westinghouse's decision to terminate her for her violations of its policies was harsh or wrong is not enough to survive summary judgment. See, Fuentes, 32 F.3d at 765.

4. Discipline Against Male Employees

Finally, Miller contends that male supervisors were not terminated for similar violations of Westinghouse's rules and procedures. In support of this position, she points to five incidents relating to four different employees. Some of these incidents relate to conduct other than processing hold tag

13

materials or having inappropriate contact with a subordinate employee. We will not consider those instances because they are not similar to the alleged misconduct in this case.

In none of the incidents raised by Miller, however, was the employee accused of violating Westinghouse's procedures with respect to processing materials and of having inappropriate contact with a subordinate employee on multiple occasions. None of the employees that Miller identifies as comparators engaged in misconduct similar to hers and within a month after being suspended for prior misconduct. As such, the length of their suspensions, if any, and the fact that Westinghouse did not terminate them, does not prove that Westinghouse's reasons for firing Miller were a pretext for gender discrimination. Therefore, Miller cannot avoid summary judgment on that evidence.

IV. CONCLUSION

In summary, there is no evidence from which a reasonable jury could conclude that Westinghouse's proferred legitimate, non-discriminatory reasons for terminating Miller were pretextual, and that the true reason for its action was gender discrimination. Accordingly, Westinghouse's motion for summary judgment will be granted.

An appropriate order follows.

14

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HOLLY A. MILLER,)
)
Plaintiff,)
)
v.) Civil Action No. 09-0263
)
WESTINGHOUSE ELECTRIC CO.,)
)
Defendant.)

ORDER

AND NOW, this 21st day of June, 2010, upon consideration of defendant's motion for summary judgment [Doc. No. 29] and the documents filed in support and opposition thereto, IT IS HEREBY ORDERED that the motion is GRANTED.

The Clerk of Court is directed to mark this case closed.

BY THE COURT:

_____, C.J.

cc: All Counsel of Record